## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | **CRIMINAL NO: 22-cr-151** |
| **v.** | ) | |
| | ) | |
| **JAMIE MCNAMARA** | ) | |

## DEFENDANT JAMIE MCNAMARA'S MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FRUITS SEIZED PURSUANTTO SEARCH WARRANT DIRECTED TO GOOGLE, INC.

Defendant, Jamie McNamara, by and through undersigned counsel pursuant to the Fourth Amendment of the United States Constitution and Rule 12 of the Federal Rule of Criminal Procedure, hereby files this MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FRUITS SEIZED PURSUANT TO SEARCH WARRANT DIRECTED TO GOOGLE, LLC. In support of this filing, the undersigned shows as follows:

### INTRODUCTION

Defendant's messages in his business email account were seized at the government's direction under the claimed authority of a federal statute, 18 U.S.C. § 2703(f) ("the preservation statute"). Exhibit A (Search and Seizure Warrant). The preservation statute provides that, "upon the request of a governmental entity,"

1

Internet providers "shall . . . retain[]" files in a user's account "for a period of 90 days," renewable for another 90 days. *Id.*

The government believes that the preservation statute allows the government to order copies made of the contents of any person's email account, and to have those contents held for the government for up to 180 days, without any cause whatsoever. Based on this understanding, Google, acting at the government's agent, seized defendant's private contents and held them on the government's behalf for 89 days. Exhibit B (Preservation Letters).[1]

This long-term, government-directed, suspicionless seizure of Defendant's business email messages cannot be reconciled with the Fourth Amendment. Instead of preservation occurring "pending the issuance of a court order," 18 U.S.C. § 2703(f)(1), as the Fourth Amendment and the plain text of the statute require, the government used the preservation statute to gain control of Defendant's account just in case probable cause eventually developed. The government ordered the seizure of the account without probable cause or even reasonable suspicion. Indeed, the government did not obtain a warrant until May 26, 2020 (Google), fully 89 days after the warrantless seizure occurred on February 27, 2020.

---

[1] The government sent two preservation letters to Google, Inc., to preserve the data on beyondmedicalsales@gmail.com. One dated February 27, 2020 and the other dated May 21, 2020. Exhibit B includes both letters.

The Fourth Amendment protects the emails and messages in a password-protected online account. A government-directed copying and setting aside of a person's business email account is a Fourth Amendment seizure. Such a warrantless seizure is permitted under the Fourth Amendment only in very limited circumstances, generally based on probable cause and permitted only for a brief period of time. Because the warrantless seizure in this case occurred without any justification and for an extended period, the fruits of that seizure—the contents of the preserved account—must be suppressed.

## STATUTORY AND FACTUAL BACKGROUND

The Stored Communications Act, 18 U.S.C. §§ 2701-11, is a federal statute that regulates government access to the private records of Internet users. Email providers such as Google hold their users' records on their computer network servers. When criminal investigators seek copies of records from the accounts of criminal suspects, investigators obtain the records directly from the email providers. The Stored Communications Act establishes the responsibilities and duties of both the government and Internet service providers when the government seeks user information. *See generally* 2 WAYNE LAFAVE, ET AL., CRIMINAL PROCEDURE § 4.8 (4th ed. 2015) (presenting overview of the statute).

This case involves the Stored Communications Act's preservation statute found at 18 U.S.C. § 2703(f). The statute provides:

(f) Requirement To Preserve Evidence.

(1) In general.— A provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process.

(2) Period of retention.— Records referred to in paragraph (1) shall be retained for a period of 90 days, which shall be extended for an additional 90-day period upon a renewed request by the governmental entity.

The preservation statute was enacted to ensure government access to user records that might otherwise be deleted before the government obtained legal process. Because obtaining legal process can be time-consuming, the preservation statute "permits the government to direct providers to 'freeze' stored records and communications" of suspects pending the issuance of a warrant or other court order. U.S. DEP'T OF JUST., SEARCHING AND SEIZING COMPUTERS AND OBTAINING ELECTRONIC EVIDENCE IN CRIMINAL INVESTIGATIONS 139 (2009).

The key question is when the preservation statute can be used. The government and major Internet providers, which includes email providers, interpret 18 U.S.C. § 2703(f) to permit unlimited preservation of Internet accounts. *See* Orin S. Kerr, *The Fourth Amendment Limits of Internet Content Preservation*, 65 St. Louis U. L.J. 753, 766-78 (2021) (summarizing government and provider practices) (Kerr, *Internet Content Preservation*). As the government interprets the law, the

statute allows any government agent, at any time, to order any provider to make and set aside a copy of every file, of any Internet email account, without any suspicion whatsoever. *See id.* The government calls this process "preservation," but it is just suspicionless seizing. Acting on the government's instruction, and as the government's agents, email providers make complete copies of target accounts and save them exclusively for later government use. *See id*. at 784-85.

Based on the belief that the § 2703(f) permits such mass-scale seizures without cause, the federal government orders the preservation of hundreds of thousands of Internet accounts every year. *See id*. at 767-69. This dragnet surveillance practice has gone unchallenged for many years. *See id*. at 755-56. Major Internet providers and the government work together to make this process both automatic and largely secret. *See id*. at 775-78. When a government agent makes a § 2703(f) request, providers will copy and preserve the account contents without question. *See id*. at 772. In the ordinary case, this process is hidden from users. Internet providers do not tell their customers that preservation occurred. And the government ordinarily does not disclose preservation. *See id.* at 775-78.

On February 27, 2020, the government submitted a § 2703(f) request to Google directing the preservation of Defendant McNamara's account, beyondmedicalsales.com. In response to that request, Google made a copy of Defendant's account. Google then set aside the copy and held it for the government.

The account was held for the government until May 26, 2020. On that date, 89 days after the preservation had occurred, the government obtained a warrant to justify the account's seizure and subsequent search. When the government submitted the warrant to Google, Google then complied with the warrant by sending the government the copy of the preserved account that had been created on February 27, 2020. Defendant now seeks the suppression and the fruits thereof of the preserved account contents as the product of an unlawful seizure.

## LEGAL ARGUMENT

The warrantless preservation of Defendant's email account violated his Fourth Amendment rights. The preservation was government action because it required Google to act on the government's behalf. Preservation triggered a Fourth Amendment seizure because it eliminated Jamie McNamara's exclusive control of his business account. It was an unreasonable seizure because it was not based on probable cause or even reasonable suspicion and was not followed promptly enough by a warrant. Further, the terms of use governing Google accounts did not eliminate Jamie McNamara's Fourth Amendment rights. The contents of the account must be suppressed because they are fruits of the unconstitutional preservation, and the good-faith exception does not apply.

### A. THE PRESERVATION OF DEFENDANT'S ACCOUNT WAS FOURTH AMENDMENT STATE ACTION.

Google's act of preserving Jamie McNamara's business email account pursuant to 18 U.S.C. § 2703(f) was government-directed action regulated by the Fourth Amendment. The Fourth Amendment applies to acts of private individuals acting as "instrument[s] or agent[s]" of the government. *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971). A private party acts as a government agent when the government "compelled a private party to perform a search" or the private party otherwise acted pursuant to the "encouragement, endorsement, and participation" of the government. *Skinner v. Railway Labor Executives' Assn*., 489 U.S. 602, 613–614 (1989). The Fifth Circuit has not adopted a government agent test, but the court has used tests developed in other Circuit courts in similar cases when a guideline was necessary to help sort through the evidence. *See United States v. Cordova-Espinoza,* 49 F.4th 964, 968 (5th Cir. 2022); *United States v. Pierce*, 893 F.2d 669, 673 (5th Cir. 1990) (utilizing a two-factor test to analyze a case-specific question of whether an airline's employees were acting as a private actor or government agent when they searched the defendant's bags). *See United States v. Meals,* 21 F.4th 903, 908 n. 3 (5th Cir. 2021). The Eleventh Circuit, for  example, has developed a two-factor test for determining when a private person or party is "acting as an instrument or agent of the government." *United States v. Propst*, 369 F. App'x. 42, 45 (11th Cir. 2010); *see also United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003).

Whatever test is use or factors are considered, there is no question that it is satisfied here. Section 2703(f) states that "upon the request of a governmental entity," the provider "shall take all necessary steps to preserve records and other evidence" in its possession, and that the records "shall be retained for a period of 90 days, which shall be extended for an additional 90-day period upon a renewed request by the governmental entity." 18 U.S.C. § 2703(f) (emphasis added). By triggering the preservation statute, the government directed what Google must do. In response, Google fulfilled the government's wishes on the government's behalf. This mandate satisfies the test for state action. *See Skinner*, 489 U.S. at 613 (noting that "compell[ing] a private party to perform a search" makes that private party a Fourth Amendment state actor).

*United States v. Hardin*, 539 F.3d 404 (6th Cir. 2008), confirms the point. In *Hardin*, an apartment manager entered an apartment at the request of the government to see if the defendant was present. The Sixth Circuit ruled that the apartment manager was a Fourth Amendment state actor. *Id*. at 407. This was true, the court ruled, "because the officers urged the apartment manager to investigate and enter the apartment, and the manager, independent of his interaction with the officers, had no reason or duty to enter the apartment." *Id.*

When Google complied with the government's directive under the preservation statute, both the government and Google believed that Google's

compliance with the government's "request" was mandatory. The statute imposes an obligation: It states what a provider "shall" do when it receives a preservation request. 18 U.S.C. § 2703(f). This is not merely "instigat[ing]" the provider's act, it is "compell[ing] a private party" to act under *Skinner*. But whether the preservation is construed as ordering or merely instigating the act of preservation, it is state action under the Fourth Amendment.

### B. PRESERVATION OF JAMIE MCNAMARA'S ACCOUNT WAS A FOURTH AMENDMENT SEIZURE.

A Fourth Amendment seizure occurs "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The classic example of a seizure is physical taking away of property. Being "dispossessed" of your property by government action causes a seizure of it. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (towing away a mobile home).

Preservation of Jamie McNamara's's business email account caused a Fourth Amendment seizure because it dispossessed him of control over the account. Internet providers "execute preservation requests by making a copy of the full contents of the relevant account and storing it separately." Kerr, *Internet Content Preservation* at 771. Although this process is labeled 'preservation,' in reality it is "a dynamic process of entry, copying, and storage." *Id.* at 782. As Internet providers have themselves explained, this is done by performing a "data pull" of the contents of the

account then take a "snapshot" of the account contents. *Id*. (quoting public statements from Twitter and Google). The copy is then stored outside the user's control so the user cannot alter or delete any files. *Id*. at 784-85.

The government-directed act of creating a government copy of the account, and storing it away for later government access, caused a "meaningful interference" with Jamie McNamara's "possessory interests in that property" because it denied him control over his private information. *Jacobsen*, 466 U.S. at 113. "Possession" is defined as the "detention and control. . . of anything which may be the subject of property." BLACK'S LAW DICTIONARY 1047 (5th ed. 1979). Before preservation occurred, Jamie McNamara had control of his account contents. He could view these files, he could alter his files, and he could delete his files as he wished.

Preservation eliminated that control. Preservation ensured that a perfect copy of the account contents was generated and detained outside his control exclusively for the government's future use. This was done for the express purpose, and with the exact effect, that Jamie McNamara could no longer control the contents of his account. Preservation therefore triggered a seizure. S*ee United States v. Bach*, 310 F.3d 1063, 1067-68 (8th Cir. 2002) (analyzing the copying and review of stored Internet contents held by an Internet provider as a Fourth Amendment "seizure" and a "search" of the contents); *Vaugh v. Baldwin*, 950 F.2d 331, 334 (6th Cir. 1991)

(noting that, in the absence of consent, the government had "no right to . . . photocopy" a person's private documents); *United States v. Loera*, 333 F. Supp. 3d 172, 185 (E.D.N.Y. 2018) ("Most courts that have addressed duplication, including digital duplication, have analyzed it as a seizure."); *Byrd v. United States*, 138 S. Ct. 1518, 1527, 200 L. Ed. 2d 805 (2018)("One of the main rights attaching to property is the right to exclude others," and, in the main, "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 430, 58 L. Ed. 2d 387 (1978)(citing 2 W. Blackstone, *Commentaries on the Laws of England*, ch. 1); Fed. R. Crim. Pro. 41(e)(2)(B) (equating the seizure of electronically stored information with the copying of the information).[2]

   In the data context, of course, the government dispossesses a person of control without physically removing the data. But that makes no legal difference. Copying private files triggers a seizure because the government gains control of the data. The government's gaining control and a user's losing exclusive control causes a seizure even though the user still has access to a prior copy of the data. *See United States v.*

---

[2] The Second Circuit expressly held that copying a file is a seizure in a panel decision that was later vacated on rehearing en banc; the en banc court did not reach the question. *See United States v. Ganias*, 755 F.3d 125, 137 (2d Cir. 2014) (holding that the Government's retention of electronic copies of the defendant's personal computer "deprived him of exclusive control over those files," which was "a meaningful interference with [the defendant's] possessory rights in those files and constituted a seizure within the meaning of the Fourth Amendment."), *vacated by United States v. Ganias,* 824 F.3d 199 (2d Cir. 2016) (en banc).

*Jefferson*, 571 F. Supp. 2d 696, 703 (E.D. Va. 2008) (holding that "recording . . . information by photograph or otherwise" is a seizure, "even if the document or disc is not itself seized," because "the Fourth Amendment privacy interest extends not just to the paper on which the information is written or the disc on which it is recorded but also to the information on the paper or disc itself"). The government cannot simply take control of the contents of everyone's private or business email messages, just as long as the government does not (yet) look at the files, entirely at the government's whim. Preservation triggers copying of the account, and that copying is a Fourth Amendment seizure permitted only if it is constitutionally reasonable. *See id.*

It should be especially clear that preservation is a Fourth Amendment "seizure" given how Internet search warrants are executed under the Stored Communications Act as required by the Fourth Amendment. *See Warshak v. United States*, 631 F.3d 266, 274 (6th Cir. 2010) (holding that accessing private emails is a Fourth Amendments search that requires a warrant). When the government serves a warrant on a provider under § 2703(a), the provider will run off a copy of the account and send the copy to the government for its review. The provider conducts the initial "seizure," and the government conducts the subsequent "search." *Cf. Bach*, 310 F.3d at 1067-68. Preservation under § 2703(f) is the "seizure" part of the Stored Communications Act's procedure for obtaining email account contents. Preservation

does not cause a search to occur, because information is not yet revealed to the government. But the transfer of control of account contents under § 2703(f) is a seizure independent of any subsequent search, and it must be independently justified as reasonable. *See Soldal*, 506 U.S. at 61 (explaining that seizures must be justified under the Fourth Amendment independently of any searches).[3]

### C. THE GOVERNMENT CANNOT SATISFY ITS BURDEN OF ESTABLISHING THAT THE WARRANTLESS SEIZURE OF THE ACCOUNTS WAS REASONABLE.

"If the defendant meets his burden of establishing a warrantless seizure, the burden then shifts. The government must establish the warrantless seizure was reasonable." *United States v. Shrum*, 908 F.3d 1219, 1229 (10th Cir. 2018). *See also United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir.1983) (*citing United States v. Impson*, 482 F.2d 197 (5th Cir.1973)). Thus, the government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the Fourth Amendment. The government cannot meet that burden. The contents of Jamie McNamara's email account were seized on May 27, 2021. Those contents were held without a warrant until June 9, 2021, when probable cause was finally asserted, and

---

[3] The Ninth Circuit recently handed down a decision with a sentence appearing to disagree with the principles explained above. *See United States v. Rosenow*, 33 F.4th 529, 546 (9th Cir. 2022) ("Here, the preservation requests themselves, which applied only retrospectively, did not meaningfully interfere with Rosenow's possessory interests in his digital data because they did not prevent Rosenow from accessing his account."). That sentence of *Rosenow* is wrong, however, for all of the reasons explained above.

a warrant was served to permit the disclosure of the account contents to the government. This government-directed suspicionless seizure, occurring for sixty-nine days, cannot be upheld as reasonable under the Fourth Amendment.

### D. GOOGLE'S TERMS OF USE DID NOT ELIMINATE JAMIE MCNAMARA'S FOURTH AMENDMENT RIGHTS.

The violation of Defendant's Fourth Amendment rights was not lessened or eliminated by the Terms of Use that apply to Google's accounts. Terms of Use found in contracts of adhesion between Internet Service Providers and their users cannot control users' Fourth Amendment rights.

Every Internet account is governed by Terms of Use, also known as Terms of Service. Terms of Use are contractual terms, drafted by lawyers for the provider, that govern when Internet users can sue the corporation that provides the service for the service that it provides. As a condition of using the service, every user must agree to the Terms of Use. And to ensure that users cannot sue providers for complying with law enforcement requests, it is standard for Terms of Use to state that the provider retains the right to comply with those requests.

Whatever legal effect such Terms of Use may have, they do not eliminate the user's Fourth Amendment rights. The Supreme Court has held that form language in a contract of adhesion between companies and their users does not control reasonable expectations of privacy. *See Byrd v. United States*, 138 S.Ct. 1518, 1529 (2018) ("As anyone who has rented a car knows, car-rental agreements are filled

with long lists of restrictions. . . . Few would contend that violating provisions like these has anything to do with a driver's reasonable expectation of privacy in the rental car—as even the Government agrees.") Such contracts are about "risk allocation" between companies and customers, and they have "little to do with whether one would have a reasonable expectation of privacy" in the item used. *Id.* (concluding that language in a rental car contract does not control whether the person has Fourth Amendment rights in the car).

What was true for rental car contracts in *Byrd* is equally true for Terms of Use in this case. Like terms of rental car contracts, Terms of Use for email accounts are written by corporate lawyers to allocate corporate risk. Terms of Use ensure that a company cannot be sued for violating the service's privacy policy when taking steps the company is legally obligated to take or may want to take for legitimate business reasons. To limit corporate liability, Terms of Use are written to limit user permissions while granting providers broad rights. *See, e.g., United States v. Nosal*, 676 F.3d 854, 860–63 (9th Cir. 2012) (providing examples). Such form language designed to minimize corporate risk did not eliminate Fourth Amendment rights in *Byrd* and cannot do so here. *See Byrd*, 138 S.Ct. at 1529-30.

The irrelevance of Terms of Use to Fourth Amendment rights is further emphasized by *Carpenter v. United States*, 138 S. Ct. 2206 (2018). In *Carpenter*, the Supreme Court rejected the view that using a cell phone eliminates a user's

Fourth Amendment rights in his phone location because operating a cell phone necessarily discloses the user's location to the user's cell phone provider. *See id*. at 2220-21. Fourth Amendment rights cannot be so easily eliminated, the Court reasoned, because using a cell phone is "a pervasive and insistent part of daily life" that is "indispensable to participation in modern society." *Id.* at 2220. "As a result, in no meaningful sense does the user voluntarily" disclose location information to the provider. *Id.* (emphasis added).

The Supreme Court's reasoning in *Carpenter* is equally applicable here. Consent to a search or seizure must be voluntary. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222-27 (1973). But using emails is "such a pervasive and insistent part of daily life" that it is "indispensable to participation in modern society." *Carpenter*, 138 S.Ct. at 2220. It is standard for email accounts to be governed by broad Terms of Use that permit providers to comply with legal process. "As a result, in no meaningful sense does the user voluntarily" waive their Fourth Amendment rights by using an account with such Terms of Use. *Id*. Indeed, no one could have any Fourth Amendment rights online otherwise because everyone would be deemed to have "consented" to searches and seizures merely by using the Internet and going along with the required terms drafted by company lawyers. As *Carpenter* and *Byrd* show, that is not the law.

Finally, even if Terms of Use could eliminate Fourth Amendment rights in theory, they cannot do so in practice because the formal act of clicking on a box to agree to Terms of Use cannot be construed as granting consent under *Florida v. Jimeno*, 500 U.S. 248 (1991). *Jimeno* held that the scope of consent is determined by asking "what would the typical reasonable person have understood by the exchange" purporting to grant consent. *Id.* at 251. As applied to email accounts, the question is whether a reasonable person observing a user's formal agreement to Terms of Use would understand the user to have actually consented to its specific language.

The answer to that question is "no." A reasonable person would interpret clicking on the box as just agreeing to use the site without concern for what the Terms say. The same is true for Jamie McNamara's act of clicking on the box to use the Google email service. Whatever legal effect the Terms of Use may have in other contexts, clicking on a box to use the service did not eliminate Jamie McNamara's Fourth Amendment rights.

### E. THE ENTIRE CONTENTS OF JAMIE MCNAMARA'S BUSINESS EMAIL ACCOUNT MUST BE SUPPRESSED AS FRUITS OF THE POISONOUS TREE.

Defendant believes that the preserved copy of his email account was turned over to the government when it served a warrant on Google June 09, 2021. Because the government only had access to that preserved copy as a result of its prior

constitutional violation, the entire contents of Defendant's account must be suppressed as fruits of the poisonous tree under *Wong Sun v. United States*, 371 U.S. 471 (1963).

Suppression is appropriate when it "results in appreciable deterrence." *Herring v. United States*, 555 U.S. 135, 141 (2009). That is the case here. Suppression is needed to deter massive-scale and ongoing violations of the Fourth Amendment. Every year, hundreds of thousands of Internet accounts are preserved based on the erroneous assumption that 18 U.S.C. § 2703(f) permits unlimited and suspicionless preservation. *See* Kerr, *Internet Content Preservation* at 755. Preservation occurs almost entirely in secret, and therefore has gone unchallenged, because governments and Internet providers do not notify their users that preservation has occurred. *See id.* at 771, 775-78. Preservation has occurred on a massive scale nationwide because it has been treated—wrongly, and in the absence of caselaw—as a constitution-free process.

Suppression of the evidence in this case would have a powerful effect "in deterring Fourth Amendment violations in the future." *Herring*, 555 U.S. at 141. At present, "preservation under § 2703(f) occurs on a wide scale with little scrutiny because law enforcement and providers consider it a privacy non-event." Kerr, *Internet Content Preservation* at 756. Many if not most preservations that occur today likely violate the Fourth Amendment. A decision from this court suppressing

the evidence would be read and digested by both government lawyers nationwide and lawyers at the major Internet providers. A suppression order in this case would force the government to bring its preservation practices into constitutional bounds. It would both limit when investigators seek preservation and trigger provider scrutiny of preservation requests.

A suppression order would have an indirect effect, as well. By identifying constitutional limits on preservation, this court's ruling would encourage providers to disclose preservation to their users, and force governments to disclose preservation to defendants, so that other individuals could more readily litigate potential violations of their Fourth Amendment rights. Under Supreme Court precedent, that deterrent effect justifies suppression. *See Herring*, 555 U.S. at 700.

Finally, the good-faith exception of *Illinois v. Krull*, 480 U.S. 340 (1987), poses no barrier to suppression. *Krull* held that the exclusionary rule does not apply "when officers act in objectively reasonable reliance upon a statute authorizing warrantless administrative searches, but where the statute is ultimately found to violate the Fourth Amendment." *Id*. at 342. Officers are entitled to rely on legislative judgments that searches are constitutional, *Krull* reasoned, at least when those legislative judgments are reasonable. *See id*. at 349-50.

*Krull* does not apply because the mistake here belongs to law enforcement instead of Congress. When Congress enacted 18 U.S.C. § 2703(f), it did not make

any legislative judgments about what law enforcement seizures are permitted or when they are constitutional. The preservation statute is not directed to governments at all. The Fourth Amendment governs when a preservation request can be made, and the preservation statute does not say otherwise. The preservation statute merely specifies what email providers such as Google must do when a government preservation request is made. "[U]pon the request of a governmental entity," the statute says, "[a] provider . . . shall take all necessary steps to preserve records and other evidence in its possession" 18 U.S.C. § 2703(f)(1).

It may be that investigators erroneously believed that § 2703(f) authorizes unlimited preservation. But, if so, that is a law enforcement mistake that falls outside *Krull*. Because there is no legislative error to defer to, the government cannot rely on *Krull* to avoid suppression. *See United States v. Wallace*, 885 F.3d 806, 811 n.3 (5th Cir. 2018) (noting, in a Fourth Amendment challenge brought to surveillance claimed to be authorized by the Stored Communications Act, that "[t]he holding of *Krull* does not extend to scenarios in which an officer erroneously, but in good faith, believes he is acting within the scope of a statute"); *People v. Madison*, 520 N.E.2d 374, 380 (Ill. 1988) (ruling that *Krull* cannot apply where a "police officer reasonably relies on his own interpretation of a valid statute in conducting a search and seizure" but courts later reject that interpretation).

Put another way, *Krull* only applies when a legislature enacts an unconstitutional law that law enforcement reasonably followed. Here, however, Congress enacted a perfectly constitutional law. Law enforcement's unconstitutional application of the preservation statute is law enforcement's fault, not the fault of Congress. The exclusionary rule should apply.

## **CONCLUSION**

For the foregoing reasons, the Defendant respectfully requests that this Court suppress all evidence obtained as a result of the unlawful seizure of Defendant's business email accounts.

Respectfully submitted,

This 31st day of May, 2023.

/s/ Randy S. Chartash
Randy S. Chartash
Georgia Bar No. 121760
randy@chartashlaw.com
Chartash Law, LLC
3151 Maple Dr., NE
Atlanta, GA 30305
Tel: 404-333-2423

/s/ Brian Steel
Brian Steel
Georgia Bar No. 677640
The Steel Law Firm, P.C.
1800 Peachtree Street, Ste 300
Atlanta, GA 30309
404-605-0023 (Phone)
404-352-5636 (FAX)
www.thesteellawfirm.com

Attorneys for Defendant J. McNamara
(Admitted pro hac vice)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES**              )
                               )          **CRIMINAL NO: 22-cr-151**
**v.**                         )
                               )
**JAMIE MCNAMARA**             )


## <u>CERTFICATE OF SERVICE</u>

I hereby certify that a copy of this matter and order gave been served via PACER on all counsel of record. This 31th day of May 2023.


*/s/ Randy S. Chartash*