UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 22-151** |
| v. | * | **SECTION: "I" (5)** |
| **JAMIE P. MCNAMARA** | * | |

\*    \*    \*

## UNITED STATES' RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO SUPPRESS

**NOW INTO COURT**, comes the United States of America, appearing herein through the undersigned counsel, and responds in opposition to Defendant Jamie P. McNamara's ("Defendant") Motion to Suppress Evidence and Fruits Seized Pursuant to Search Warrant Directed to Google, Inc. Rec. Doc. 42. Defendant erroneously claims that two government preservation requests made to Google constituted government searches and seizures of Defendant's emails. As detailed below, the preservation requests were not Fourth Amendment searches and seizures by a government actor. Google had authority to copy Defendant's email account, and Defendant himself consented to it. Defendant's Motion has little to do with the facts of this particular case, and instead is an obvious attempt to challenge a federal law with which Defendant disagrees. The Court should deny Defendant's Motion without a hearing.

## BACKGROUND

On February 27, 2020, and May 21, 2020, the government served preservation requests on Google for stored communications in Google's possession, from January 1, 2016, to the date of the requests, regarding the email account "beyondmedicalsales@gmail.com" (the "account"). The requests were made pursuant to Title 18, United States Code, Section 2703(f), and requested that

communications be preserved for 90 days. *See* Rec. Doc. 42-3 at 1 (Feb. 27, 2020 preservation letter), 3 (May 21, 2020 preservation letter).

On May 26, 2020, Judge Dana M. Douglas issued a search and seizure warrant for the account, authorizing the search and seizure of emails from October 2017 to the date of the warrant. *See* Rec. Doc. 42-1 at 1 (filed under Case No. 20-mc-1513). The warrant was issued pursuant to the Stored Communications Act, Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A). The affidavit supporting the warrant twice referenced the initial preservation request made by the government on February 27, 2020. *Id.* at 3, 46. In support of the warrant, the government submitted an extensive, 50-page affidavit detailing the crimes committed by Defendant and his use of the account in furtherance of those crimes. *See id.* at 7-56.

In July 2022, Defendant was charged in an 18-count Indictment with conspiracy to commit health care fraud and wire fraud, health care fraud, conspiracy to pay and receive kickbacks, offering and paying kickbacks, conspiracy to commit money laundering, and money laundering. Rec. Doc. 1. The allegations generally relate to a scheme by Defendant and others to submit over $174 million in false and fraudulent claims to Medicare for genetic testing that was ineligible for reimbursement because the testing was not medically necessary and was procured through the payment of illegal kickbacks and bribes. *Id.* at ¶ 34. Trial is currently set for July 10, 2023. Rec. Doc. 32.

## LAW

The Stored Communications Act, 18 U.S.C. §§ 2701-2713, regulates access to and disclosure of stored communications and other information held by electronic communication service providers. The first three subsections of Section 2703 specify procedures that a governmental entity may use to compel a service provider to disclose various categories of

information pertaining to a subscriber or customer. *See* 18 U.S.C. §§ 2703(a)-(c). These procedures include search warrants, court orders based on a showing of relevance and materiality, and subpoenas.

Section 2703(f) allows a governmental entity to request a service provider to preserve records temporarily. It states that a service provider, "upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process." 18 U.S.C. § 2703(f)(1). The provider is required to retain preserved information for 90 days, and the governmental entity may request a 90-day extension. *See* 18 U.S.C. § 2703(f)(2). After the period of required preservation ends, the provider is free to delete the preserved information. Preservation requests do not apply prospectively: the provider's duty to preserve is limited to information that the provider already had in its possession when it received the preservation request.

Based on this legal authority, the government often sends preservation requests to electronic communications providers in order to ensure that data the government intends to seek will not be deleted – whether intentionally by the account holder or as a result of the provider's normal data retention practices. Many providers accept service of preservation requests via email or online portals. Section 2703(f) does not mandate a specific manner of preservation by the provider. Many providers comply with a preservation request by making a copy of the specified account, but a provider may comply with a preservation request through other mechanisms, including temporarily limiting the deletion of account information.

## ARGUMENT

Defendant's Motion seeks to turn the government's Section 2703(f) preservation request into a warrantless Fourth Amendment seizure, but this argument fails for several reasons. First, a preservation request to Google does not create an agency relationship between the government and Google. Second, the preservation of emails by a third party is not a Fourth Amendment search or seizure. Third, Defendant consented to Google preserving his email, and Google had authority to do so. Finally, even if the Fourth Amendment applied, the preservation requests were reasonable, and the good-faith exception to the exclusionary rule precludes suppression in this case.

### A.    Preservation Does Not Create an Agency Relationship

As an initial matter, Defendant's argument that the preservation requests violated the Fourth Amendment fails because preservation does not create an agency relationship. The Fourth Amendment does not reach conduct by a private individual unless the private individual is acting as an agent of the government. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Defendant claims that the preservation requests made Google a government agent, *see* Rec. Doc. 42-1 at 6-9, but when a party complies with a legal duty to preserve information in its possession, it does not become a government agent. For example, all taxpayers are required to keep tax records, *see* 26 U.S.C. § 6001, but such a requirement does not transform all taxpayers into government agents. Nor does 18 U.S.C. § 1519, which criminalizes knowingly destroying records with intent to obstruct a federal investigation, convert everyone in possession of such records into government agents.

In *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 26 (1974), the Supreme Court considered constitutional challenges to the Bank Secrecy Act and associated regulations that required banks to keep, for a period of years, specified records useful in criminal investigations.

4

*See* 12 U.S.C. § 1829b(g). The appellant argued that the Act was unconstitutional because it made "the banks the agents of the Government." *California Bankers Ass'n*, 416 U.S. at 45. The Supreme Court rejected this argument, explaining that "[s]uch recordkeeping requirements are scarcely a novelty." *Id.* The reasoning of *California Bankers Ass'n* should extend to Defendant's Motion, and the Court should find that Google was not a government actor.

### B. Preservation Is Not a Search or Seizure

Defendant's challenge to the preservation requests also fails because a preservation request is neither a search nor a seizure. *See* Rec. Doc. 42-1 at 9-13.[1] When the government sends a preservation request to a service provider, it obtains no information at all, and the account owner retains full and unhindered access to his account. It therefore is not a seizure, which requires "some meaningful interference with an individual's possessory interests in that property." *Jacobsen*, 466 U.S. at 113. In addition, Section 2703(f) includes no general recordkeeping requirements; a Section 2703(f) request requires only temporary preservation of information that the provider has already chosen to store. This temporary mandate does not constitute a meaningful interference with an account holder's possessory interests.

---

[1] In support of his Motion, Defendant relies extensively on a law review article by Professor Orin S. Kerr, "The Fourth Amendment Limits on Internet Content Preservation," 65 St. Louis U. L.J. 753 (2021). A subsequent law review article published in 2022 responds to the arguments made by Professor Kerr and concludes that preservation requests are not a Fourth Amendment search or seizure. The article explains, "Professor Kerr first proposed this argument in 2010. He has spoken to organizations of criminal defense attorneys suggesting that they raise this question, and he has posted a short summary of this argument on the Volokh Conspiracy. Yet, there are almost no cases on the subject. Defense attorneys have not taken up his challenge. Prosecutors and providers continue to use the preservation process. That suggests that most people believe that when the provider makes a copy, but the government cannot see it until it provides a search warrant, there is no seizure." Michael L. Levy, "Preservation Letters and Fourth Amendment Seizures: A Response to Professor Kerr," 66 St. Louis U. L.J. 749, 761 (2022). The government's review of case law on this subject corroborates Mr. Levy's position. Namely, despite Mr. Kerr's argument originating in 2010, the government has found no state or federal court opinion citing Mr. Kerr's law review article.

Nor is preservation a Fourth Amendment search. The government conducts a Fourth Amendment search in two circumstances. First, the government conducts a search when it infringes "an expectation of privacy that society is prepared to consider reasonable." *Jacobsen*, 466 U.S. at 113. A preservation request infringes no privacy interest: the government obtains no information, and the service provider merely retains information it already stores.

Second, the government conducts a search when it "physically occupie[s] private property for the purpose of obtaining information." *United States v. Jones*, 565 U.S. 400, 404 (2012). To constitute a search under *Jones*, the invasion of private property must constitute a trespass. *See id.* at 411-13. A preservation request cannot constitute a search under *Jones* for multiple reasons. First, a preservation requests simply requires a service provider to retain information that it already possesses; it requires no occupation of private property at all. Second, an email service provider like Google does not trespass when it preserves or copies information already in its possession; copying and saving are already components of the provider's service. Third, a search under *Jones* requires a "physical" occupation of private property—as opposed to electronic—and preservation involves no physical occupation. *See Jones*, 565 U.S. at 411 ("Situations involving merely the transmission of electronic signals without trespass would remain subject to *Katz* analysis.") (citing *Katz v. United States*, 389 U.S. 347 (1967)).

Based on the government's review, no court has found that a Section 2703(f) preservation request by an electronic communications service provider, such as Google, is "government-directed action regulated by the Fourth Amendment," as Defendant claims. Rec. Doc. 42-1 at 7. In fact, courts have found the opposite.  For example, in *United States v. Rosenow*, No. 17-cr-3430, 2018 WL 6064949, at *10 (S.D. Cal. Nov. 20, 2018), the court found that preservation requests "did not interfere with the Defendant's use of his accounts and did not entitle the Government to

6

obtain any information without further legal process." The court concluded that the preservation requests "did not amount to an intrusion subject to Fourth Amendment requirements." *Id.* The Ninth Circuit affirmed. *See United States v. Rosenow*, 33 F.4th 529, 546 (9th Cir. 2022) ("Here, the preservation requests themselves, which applied only retrospectively, did not meaningfully interfere with Rosenow's possessory interests in his digital data because they did not prevent Rosenow from accessing his account. Nor did they provide the government with access to any of Rosenow's digital information without further legal process."). However, the Ninth Circuit subsequently deleted that portion of its opinion. *United States v. Rosenow*, 50 F.4th 715 (9th Cir. 2022). Most recently (just over a week ago), the D.C. Superior Court addressed the same arguments raised herein by Defendant and held that "the preservation letter did not effect a search or a seizure." *United States v. Mills*, No. 2020 CF1 004432, at 20-22 (D.C. Superior Ct. May 22, 2023). Defendant fails to cite any contrary case holding that a preservation request constitutes a search or seizure.

In short, a service provider copying information pursuant to a preservation request does not violate the Fourth Amendment. To the extent that Google copied Defendant's account pursuant to the preservation requests, Google did not meaningfully interfere with Defendant's possession of it, as he remained free to use the account for whatever purposes he deemed fit. Thus, preservation of Defendant's account was neither a search nor a seizure. *See Arizona v. Hicks,* 480 U.S. 321, 324 (1987) (recording of serial number on suspected stolen property was not seizure because it did not "meaningfully interfere" with respondent's possessory interest in either the serial number or the equipment"); *Bills v. Aseltine,* 958 F.2d 697, 707 (6th Cir. 1992) (officer's photographic recording of visual images of scene was not seizure because it did not "meaningfully interfere" with any possessory interest); *United States v. Gorshkov*, No. CR00-550C, 2001 WL

7

1024026, at *3 (W.D. Wash. May 23, 2001) ("[T]he agents' act of copying the data on the Russian computers was not a seizure under the Fourth Amendment because it did not interfere with Defendant's or anyone else's possessory interest in the data. The data remained intact and unaltered. It remained accessible to Defendant and any co-conspirators or partners with whom he had shared access. The copying of the data had absolutely no impact on his possessory rights. Therefore it was not a seizure under the Fourth Amendment." (footnote omitted)).

      **C.**     **Google Had Authority to Copy Defendant's Account, and Defendant Consented to It**

Even if preservation of Defendant's account were a search or seizure, it would not violate the Fourth Amendment because Google had authority to create copies of Defendant's email account and because Defendant consented to it. Defendant attempts to minimize the fact that he consented to Google's copying of his email account when choosing to use a Google account and agree to its Terms of Service, downplaying the Terms of Service as a "contract[] of adhesion." Rec. Doc. 42-1 at 14. But the government is not arguing, as Defendant claims, that an email provider's terms of service effectively "eliminate [a subscriber's] Fourth Amendment rights" in his or her account. *Id.* at 15.[2] Instead, it is well settled that consent is an exception to the Fourth Amendment's warrant requirement, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), and such consent may be established through a subscriber's agreement to terms of service. Moreover, a lawful search or seizure can be authorized by "a third party who possessed common authority

---

[2] Defendant likens Google's Terms of Service with the rental car agreement in *Byrd v. United States*, 138 S. Ct. 1518, 1529 (2018), which held that mere violation of a rental car agreement did not preclude a reasonable expectation of privacy in the rental car in which officers found bricks of heroin and body armor. Rec. Doc. 42 at 15 ("What was true for rental car contracts in *Byrd* is equally true for Terms of Use in this case."). *Byrd* has no bearing on the present argument about preservation requests, both because preservation did not constitute a Fourth Amendment search or seizure, *see supra*, and because the government has not argued here that the defendant violated Google's terms of service in a way that precluded any reasonable expectation of privacy.

8

over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974).

Here, Google had a sufficient relationship to Defendant's account to preserve or copy its contents. Indeed, copying and storage are the basic functions of the service Google provided Defendant. *See Hately v. Watts*, 917 F.3d 770, 791-92 (4th Cir. 2019) ("when a web-based email service receives an email, it typically generates numerous copies of the email"). In *United States v. Ziegler*, 474 F.3d 1184 (9th Cir. 2007), the court concluded that an employer's authority over a workplace computer allowed it to copy an employee's hard drive and disclose it to the government. *Id.* at 1191-92. Google's authority over email it stores on behalf of its subscribers is at least sufficient to allow it to preserve a copy.

Moreover, a service provider's terms of service can establish subscriber consent. *See, e.g.*, *United States v. Adkinson*, 916 F.3d 605, 610 (7th Cir. 2019) (rejecting Fourth Amendment challenge to disclosure of cell phone location information, holding in part that defendant "agreed to T-Mobile's policy that T-Mobile could disclose information when reasonably necessary to protect its rights, interests, property, or safety"). Here, Google customers are subject to its Terms of Service, as well as its Privacy Policy, which states that Google "collect[s] the content you create, upload, or receive from others when using our services," such as "email you write and receive." *See* Google Privacy Policy, Mar. 31, 2020, *available at* https://policies.google.com/privacy/archive/20200331.[3] Google's Privacy Policy makes clear that Google "will share personal information outside of Google if we have a good-faith belief that access, use, preservation, or disclosure of the information is reasonably necessary to . . . [m]eet any applicable law, regulation, legal process, or enforceable governmental request." *Id.* Because

---

[3] Courts have taken judicial notice of provider terms of service. *See, e.g.*, *United States v. Warshak*, 631 F.3d 266, 287 (6th Cir. 2010).

9

Defendant consented to Google's ability to preserve his account, that preservation does not violate the Fourth Amendment.

### D. The Preservation Requests Were Reasonable

Even if this Court were to find that preservation requests are searches and seizures to which Defendant did not consent, they would not violate the Fourth Amendment based on traditional standards of reasonableness. *See* Rec. Doc. 42-1 at 13-14. The Supreme Court has recognized that "[i]n some circumstances, such as '[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable.'" *Maryland v. King*, 569 U.S. 435, 447 (2013) (quoting *Illinois v. McArthur*, 531 U.S. 326, 330 (2001)). At a minimum, *California Bankers Ass'n* establishes that a statute mandating the preservation of records need not include a search warrant requirement. *California Bankers Ass'n*, 416 U.S. at 52-54 ("That the bank in making the records required by the Secretary acts under the compulsion of the regulation is clear, but it is equally clear that in doing so it neither searches nor seizes records in which the depositor has a Fourth Amendment right."). Thus, if preservation requests are subject to Fourth Amendment scrutiny at all, courts should "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Maryland v. King*, 569 U.S. at 448.

Here, the privacy impact of preservation requests on account holders is minimal, but law enforcement's interest in preserving information is compelling. Concerning Defendant's privacy interest, preservation requests do not result in disclosure of information. They do not result in collection of information not already stored by the provider. They do not hinder an account holder's access to or use of his account. Their duration is inherently time-limited and brief. In

addition, the government must obtain appropriate legal process, such as a search warrant, in order to actually obtain information from the account.

On the other side of the balance, the government has a compelling interest in preservation requests. Electronic evidence is critical in a wide range of criminal investigations, and it can be deleted irretrievably in an instant. The procedures of Section 2703 allow the government both to ensure that critical data is not lost and to obtain appropriate process to compel disclosure of the information. Preservation requests also play a critical role in other important circumstances, such as investigations by foreign countries of crime: Section 2703(f) allows the United States to request that service providers preserve data while foreign countries pursue the lengthy Mutual Legal Assistance Treaty process.

Further, in *Illinois v. McArthur*, the Supreme Court explained that it has "has upheld temporary restraints where needed to preserve evidence until police could obtain a warrant." 531 U.S. at 334. Here, the preservation letters only gave the government the two 90-day periods that the legislative branch deemed reasonable to decide whether to obtain a warrant and to obtain it. The government in fact promptly obtained a warrant, within that period, issued by a magistrate judge based on a finding of probable cause. Balancing these interests, the government's reliance on the preservation rules of Section 2703(f) is reasonable. This conclusion is bolstered by the "strong presumption of constitutionality" of federal statutes challenged on Fourth Amendment grounds. *United States v. Watson*, 423 U.S. 411, 416 (1976). The preservation of Defendant's account did not violate the Fourth Amendment.

E.  **The Good Faith Exception Precludes Suppression**

Finally, even if the preservation in this case violated the Fourth Amendment, suppression would not be an appropriate remedy. *See* Rec. Doc. 42-1 at 17-21. In *Illinois v. Krull*, 480 U.S.

11

340, 349-50 (1987), the Supreme Court held that the good-faith exception to the exclusionary rule applies where law enforcement reasonably relies on a statute later determined to be unconstitutional. *See also United States v. Korte*, 918 F.3d 750, 757-59 (9th Cir. 2019) (applying *Krull* to reject suppression of cell-site information obtained in good-faith reliance on 18 U.S.C. § 2703(d)); *United States v. Warshak*, 631 F.3d 266, 288-92 (6th Cir. 2010) (holding that government relied in good faith on 18 U.S.C. § 2703 in compelling disclosure of email content with a subpoena and court order). Moreover, this Court may conclude that officers relied in good faith on a statute without resolving the statute's constitutionality. *See, e.g.*, *United States v. Vanness*, 342 F.3d 1093, 1098 (10th Cir. 2003).

*Krull* applies here because the government followed Section 2703(f) when it sent preservation requests to Google, and because no court has ever found this provision unconstitutional. The government then applied for a search warrant within the 90-day preservation period. Additionally, Defendant offered no evidence to show that Google even produced to the government records derived from the preservation requests, as opposed to simply producing the emails that existed in Defendant's account at the time of the warrant.[4] Because the United States reasonably relied on the procedures of Section 2703, *Krull* precludes suppression of Defendant's account.

---

[4] Defendant never alleges that he attempted to delete the emails from his account. In the absence of such an attempt, his emails would remain stored in his email account and would be produced by Google in response to the warrant, regardless of any separate copy of the account created in response to the preservation requests. Defendant thus fails to allege facts that would establish that the preservation request was a but-for cause of the government obtaining his account. Because "but-for causality is . . . a necessary . . . condition for suppression," *Hudson v. Michigan*, 547 U.S. 586, 592 (2006), Defendant's challenge to the preservation request fails.

**CONCLUSION**

For the foregoing reasons, this Court should deny Defendant's Motion to Suppress.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF LOUISIANA

GLENN S. LEON
CHIEF
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

By:   *s/Justin M. Woodard*
JUSTIN M. WOODARD
KELLY WALTERS
Trial Attorneys
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC 20530
Tel: (202) 262-7868
E-Mail: Justin.Woodard@usdoj.gov

*s/Nicholas D. Moses*
NICHOLAS D. MOSES
Assistant United States Attorney
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3132
E-Mail: Nicholas.Moses@usdoj.gov

## CERTIFICATE OF SERVICE

      I, Justin M. Woodard, hereby certify that on June 6, 2023, I served the foregoing document on counsel of record via ECF.

                                                *s/Justin M. Woodard*
                                                JUSTIN M. WOODARD
                                                Trial Attorney