## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | **CRIMINAL NO: 22-cr-151** |
| **v.** | ) | |
| | ) | |
| **JAMIE MCNAMARA** | ) | |

## DEFENDANT JAMIE MCNAMARA'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant McNamara, through counsel, respectfully submits his reply to the government's response in opposition to his motion to suppress the contents of internet account.

## ARGUMENT

**I. Preservation was a seizure, whether or not the government ultimately obtained content.**

**a. The private entities in this case acted as agents for the government.**

The government starts its argument that the preservation letters are not a search or seizure by claiming that there was no Fourth Amendment violation here because the provider, Google, which is a private party, did not act as an agent of the government. This argument fails as a matter of fact. The preservation orders commandeered Google, the service provider, to create copies of defendant McNamara's data that were then no longer under his control. Absent these preservation orders, the copies would not have existed.

1

The government argues that there was no agency relationship because taxpayers have a duty to maintain tax records. The government's analogy is misplaced because unlike taxpayers, the service providers here had no ongoing duty to make and preserve backup copies of their customers' account in case those account are subpoenaed. Instead. the government sent the providers an order that created a duty to take a specific action at the behest of the government. 18 U.S.C. § 2703(f). If one's Google data were like tax records, there would have been no need for preservation orders. The fact is that there was no obligation, individually or on behalf of any service provider, to preserve defendant McNamara's data, absent the preservation orders.

The government relies on *California Bankers Association v. Shultz,* 416 U.S. 21 (1974), but that case does not support the government's position. *Shultz* addressed the argument made by banks that their due process rights were violated by the "unreasonable burdens" of certain recordkeeping requirements. *Id.* at 42. The focus of the bank's argument were the unreasonable burdens placed on them "by seeking to make the banks the agents of the Government in surveillance of its citizens." *Id.* at *45.* But the Supreme Court's decision did not have anything to do with the issue of agency, as the government suggests. Rather, it was the extent of the burdens on the banks, which the Supreme Court held were common. *Id.* at 50. Neither the reasoning nor the holding of *Shultz* bears on who is a Fourth Amendment state actor.

**b. A preservation request fulfilled by a provider is a Fourth Amendment seizure.**

The government argues that a preservation request is not a seizure because there is no meaningful interference with an individual's possessory interest in the property. This argument is easily refuted. First, the government claims that when it ordered the providers to preserve the account information, it "'obtain(ed) no information at all." Govt Response at 7. This is a distinction without a difference because, the providers were acting as agents of the government when seizing the account. The conduct of the providers in this case are thus state action attributable to the government.

Second, the government claims that defendant McNamara retained control over his account. *Id.* This is clearly not true, because if defendant McNamara sought to exercise control over his account by, for example, deleting emails with a former employer or confidential journalistic source, he would not have ability to exercise such control. This is the direct result of the government's enlistment of a third-party with the very purpose of depriving him of that control. The government suggests that defendant McNamara's argument is absurd because he is "essentially arguing that he should have the right to obstruct justice by deleting his data at any time." *Id.* The government's argument could just as easily apply to any illegal Fourth Amendment seizure. As Professor Kerr writes, the risk that valuable electronic evidence

3

can be deleted irretrievably in an instant does not differentiate electronic seizures from physical seizures. The concern justifying temporary warrantless physical seizures has always been that a seizure now may be needed to ensure that important evidence is not lost. Recall the many cases in which the government seizes a package suspected of containing drugs. Unless the government held on to the package, the package and its contents could be gone forever. Drugs might be flushed down the toilet, moved to an unknown place, or consumed. The ease of deleting digital evidence is nothing new and does not justify a different rule.

Kerr, Content Preservation at 272-73. Just as an individual who objects to a warrantless search of his home is not arguing that he has a right to commit crimes in his home, defendant McNamara objects to the seizure of his internet account because the Constitution requires a warrant, and no warrant exception applies to the seizures here.

The government's arguments also contradict Supreme Court precedent. *United States v. Jacobsen* states that property is seized "when there is some meaningful interference with an individual's possessory interests in that property." 466 U.S. 109, 113 (1984). *See also United States v. Jefferson*, 571 F. Supp. 2d 696, 703 (E.D. Va. 2008) (holding that "recording . . . information by photograph or otherwise" is a seizure, "'even if the document or disc is not itself seized," because "Fourth Amendment privacy interest extends not just to the paper on which the information is written or the disc on which it is recorded but also to the information on the paper or disc itself).

For all of these reasons, copying defendant McNamara's internet accounts was a Fourth Amendment seizure.

### c. Defendant McNamara did not consent to an unlawful Fourth Amendment seizure of his accounts.3-

The government argues that defendant McNamara consented to the seizure of his account by Google at the behest of the government. The government relies on the Google terms of service to which defendant McNamara allegedly agreed. As discussed in defendant McNamara's motion, terms of service do not eliminate the Fourth Amendment rights or amount to consent because they are contracts between a private Internet company and private users such as defendant McNamara. The government nevertheless argues that because the agreements included provisions that authorized the providers to preserve account data where "legally required to do so" (Google) or upon receipt of valid legal process." However, even if these terms of service were ones that defendant McNamara acquiesced to simply by using the services at issue, he is not alleging that Google breached the terms. Instead, he is alleging that the government violated the Fourth Amendment by prevailing on the providers to seize the accounts without first establishing probable cause to do so.

The scenario here is therefore no different than if the government had sent the providers a fake warrant for the account contents, and the providers complied. Defendant McNamara would not be arguing that providers breached the terms of service; he would be arguing that the account contents were illegally seized and

searched. So here, the government violates the Fourth Amendment by ordering the contents of an account seized without a warrant, supported by probable cause. *See Soldal* v. *Cook Cnty.,* 506 U.S. 56, 61 (1992) (explaining that seizures must be justified under the Fourth Amendment independently of any searches).

The government argues that the providers had "common authority" over the contents of the account and defendant McNamara assumed the risk of providers preserving his data. This argument is without merit because such authority is "'not to be implied from the mere property interest a third-party has in the property, such as Google' s ownership of the platform that hosts the account." *United States* v. *Matlock,* 415 U.S. 164, 172 n.7 (1974). Instead, common authority is based "on *mutual use* of the property by persons generally having joint *access or control for most purposes,* so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* (emphases added). The provider in this case is not co-owner of the content who have "mutual use" of the account, but rather a bailee3 of the digital papers and communications therein. *See, e.g., Knupa v. TIC Int'l Corp.,* No. I :22- CV-01951- JRS-MG, 2023 WL 143140, at 1 (S.D. Ind. Jan. 10, 2023) (finding that company holding the plaintiff's data was a bailee of the information) (relying on *Carpenter v. United States,* 138 S. Ct. 2206, 2268-69 (2018) (Gorsuch, J., dissenting).

Furthermore, "assumption of risk" is not an independent theory on which the government can rely. Rather, it is a factor courts have relied upon in determining whether "common authority" over property exists. *Matlock,* 415 U.S. at 172 n.7; *Georgia* v. *Randolph,* 547 U.S. 103, 111-12 (2006); *Fernandez* v. *California,* 571 U.S. 292, 301 (2014). Because Google does not have common authority over the accounts at issue, defendant McNamara did not "assume the risk" that these companies would seize the account contents on behalf of the government absent a warrant.

### d. Preservation was not reasonable.

### (1) The Seizures Cannot Be Justified Based on Probable Cause

Probable cause at the inception of a seizure permits the government to temporarily detain property pending the issuance of a warrant. *See United States v. Place,* 462 U.S. 696, 701 (1983). This authority allows the government to seize property based on probable cause so long as agents proceed to work diligently to obtain a warrant that permits the property's long-term seizure and subsequent search. *See Id.* The preservation statute expressly contemplates this temporary and limited role as it limits preservation to circumstances "pending the issuance" of a warrant (for contents) or other legal procedures for non-content records). 18 U.S.C. § 2703(f)(1). The seizure of defendant McNamara's account cannot be justified. S-eizure of the accounts was not based on probable cause. The temporary warrantless

seizure of property must be justified "at its inception." *United States v. Sharpe,* 470 U.S. 675, 482 (1985). But the government did not have the probable cause needed to justify the preservation at its inception. As Professor Kerr has explained, "[p]reservation letters are typically submitted early in an investigation just in case probable cause eventually emerges." Kerr at 766. When investigators learn a suspect has an online account, they will submit a preservation request to seize the account. *See id.* A common government strategy is to seek "unlimited preservation just in case probable cause might emerge." *id.* at 757, to "ensure that every record in existence at the outset is available if probable cause later develops." *Id.* at 757. About half the time, governments do not follow up with any legal process at all, much less with a warrant needed to compel the contents of an account. *See id.* at 770. Although this is a case when the government did follow up and eventually obtained a warrant under 18 U.S.C. § 2703(a), a warrantless seizure must be justified "at its inception." *Sharpe,* 470 U.S. at 682. On February 27, 2020, and May 21, 2020, the dates the government directed the preservation of the accounts, the government lacked probable cause to believe the account contained evidence. The government bears the burden of establishing sufficient cause at the time of the seizure, and it has provided no basis to conclude it can satisfy that burden.

*(2) The Seizure Cannot Be Justified By General Reasonableness Principles.*

The government tries to meet its burden of justifying the seizure of defendant McNamara's account on general reasonableness grounds in the absence of probable cause. But the Fourth Amendment's requirements do not simply get swept aside whenever the government believes that a warrantless seizure is reasonable. Instead, this can only be based on established exceptions. which are: (a) the investigative detention principles of *Terry v.Ohio,* 368 U.S. I (1968); (b) the "special needs" exception; and (c) the rules for detention during the execution of search warrants. None of these lines of cases supports the government's position.

### III. Suppression of the illegally seized accounts is required in this case.

#### a.  The good faith exception does not apply

The government argues that the good faith exception should apply because. as in *Krull,* the government was relying on a statute, 18 U.S.C. § 2703(f), in issuing the preservation letters. The government's reliance on *Illinois v. Krull,* 480 U.S. 340 (1987) is misplaced. In that case, the Supreme Court held that investigators act reasonably when they rely on "'the judgement of the legislature that passed the law," even if the law is subsequently held unconstitutional," but as noted in defendant McNamara's motion to suppress, the statute at issue here does not "'expressly authorize" the actions taken by the agents because the mistake here belongs to law enforcement instead of Congress. When Congress enacted 18 U.S.C. § 2703(f), it did not make any legislative judgments about what law enforcement seizures are

permitted or when they are constitutional. The preservation statute is not directed to governments at all. The Fourth Amendment governs when a preservation request can be made, and the preservation statute does not say otherwise. Indeed, *Kroll* itself left open the scenario in which police officers believe that they are reasonably interpreting a statute, but in fact are acting outside of the statute. *See Krull,* 480 U.S. at 361-62 n.17 (declining to address whether the exclusionary rule would apply if an officer acted outside a statute that authorized searches and seizures was later deemed unconstitutional and noting that the application of the exclusionary rule "'might well be different when police officers act outside the scope of a statute, albeit in good faith" because "the relevant actors are not legislators or magistrates but police officers"); *See also United States v. Wallace,* 885 F.3d 806, 811 n.3 (5th Cir. 2018) (noting, in a Fourth Amendment challenge brought to surveillance claimed to be authorized by the Stored Communications Act, that "(t]he holding of *Krull* does not extend to scenarios in which an officer erroneously, but in good faith, believes he is acting within the scope of a statute").

## CONCLUSION

For all of the foregoing reasons, the Court should suppress the information preserved in defendant McNamara's internet account based on the government's warrantless preservation letters and turned over to the government based on a subsequent warrant.

This 9th day of June 2023.

Respectfully submitted,

/s/ Randy S. Chartash
Randy S. Chartash
Georgia Bar No. 121760
randy@chartashlaw.com
Chartash Law, LLC
3151 Maple Dr., NE
Atlanta, GA 30305
Tel: 404-333-2423

/s/ Brian Steel
Brian Steel
Georgia Bar No. 677640
The Steel Law Firm, P.C.
1800 Peachtree Street, Ste 300
Atlanta, GA 30309
404-605-0023 (Phone)
404-352-5636 (FAX)
www.thesteellawfirm.com

Attorneys for Defendant J. McNamara
(Admitted pro hac vice)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | **CRIMINAL NO: 22-cr-151** |
| **v.** | ) | |
| | ) | |
| **JAMIE MCNAMARA** | ) | |

## <u>CERTFICATE OF SERVICE</u>

I hereby certify that a copy of this matter and order gave been served via PACER on all counsel of record. This 9th day of June 2023.

*/s/ Randy S. Chartash*